IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LISA M. KIRK, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 08-521-JJF |
| | : |
| MICHAEL J. ASTRUE, | : |
| Commissioner of Social | : |
| Security, | : |
| | : |
| Defendant. | : |
| | : |
| | : |

Steven L. Butler, Esquire of LINARDUCCI & BUTLER, New Castle,
Delaware.
Of Counsel:  David F. Chermol, Esquire of CHERMOL & FISHMAN, LLC,
Philadelphia, Pennsylvania.

Attorney for Plaintiff.

David C. Weiss, Esquire, United States Attorney, and Patricia
Stewart, Esquire, Special Assistant United States Attorney, of
the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.
Of Counsel:  Eric P. Kressman, Esquire, Acting Regional Chief
Counsel of the SOCIAL SECURITY ADMINISTRATION, Philadelphia,
Pennsylvania.

Attorneys for Defendant.

**MEMORANDUM OPINION**

July $\underline{15}$, 2010
Wilmington, Delaware

Farnan, District Judge.

Presently before the Court is an appeal pursuant to 42 U.S.C. § 405(g) filed by Plaintiff, Lisa M. Kirk, seeking review of the final administrative decision of the Commissioner of the Social Security Administration (the "Administration") denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f. Plaintiff has filed a Motion For Summary Judgment (D.I. 14) requesting the Court to reverse the decision of the Commissioner and direct an award of benefits, or in the alternative, to remand this matter to the Administration for further development and analysis. In response to Plaintiff's Motion, Defendant has filed a Cross-Motion For Summary Judgment (D.I. 21) requesting the Court to affirm the Commissioner's decision. For the reasons set forth below, Defendant's Cross-Motion For Summary Judgment will be denied, and Plaintiff's Motion For Summary Judgment will be granted. The decision of the Commissioner dated March 14, 2008, will be reversed and the Court will direct the Commissioner to award benefits to Plaintiff.

## BACKGROUND

### I. Procedural Background

Plaintiff filed her application for SSI on August 17, 2005, alleging disability since October 1, 1993, for numerous physical and mental impairments. (Tr. 10, 116-122). Plaintiff's

1

application was denied initially and upon reconsideration. (Tr. 70-74, 76-79). Thereafter, Plaintiff requested a hearing before an administrative law judge (the "A.L.J."). (Tr. 23-60, 84). On March 14, 2008, the A.L.J. issued a decision denying Plaintiff's application for SSI. (Tr. 7-22). Following the unfavorable decision, Plaintiff timely appealed to the Appeals Council. (Tr. 4, Supp. Tr. 492-495). The Appeals Council denied Plaintiff's request for review (Tr. 1-4), and the A.L.J.'s decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000).

After completing the process of administrative review, Plaintiff filed the instant civil action pursuant to 42 U.S.C. § 405(g) seeking review of the A.L.J.'s decision denying her claim for SSI. In response to the Complaint, Defendant filed an Answer (D.I. 9) and the Transcript (D.I. 12) of the proceedings at the administrative level.

Thereafter, Plaintiff filed a Motion For Summary Judgment and Opening Brief in support of the Motion. In response, Defendant filed a Cross-Motion For Summary Judgment and a Combined Opening Brief in support of his Cross-Motion and Opposition to Plaintiff's Motion requesting the Court to affirm the A.L.J.'s decision. Plaintiff has filed a Reply Brief. Accordingly, the Court will proceed to address the merits of Plaintiff's claims.

## II. **Factual Background**

### A. Plaintiff's Medical History, Condition and Treatment

At the time of the A.L.J.'s decision, Plaintiff was forty-one years old and defined as a "younger person" under 20 C.F.R. 416.933(c). (Tr. 28, 573-574). Plaintiff has an eighth grade education and no past relevant work. (Tr. 29, 16).

The record contains a detailed account of Plaintiff's medical history. By way of brief summary, Plaintiff has a twenty-year history of drug addiction. (Tr. 271, 298, 300-02, 304, 315, 329). She has been in a methadone program since January 3, 2006, after ten detoxification attempts (Tr. 261, 271, 305-306). By the time of the hearing in February 2008, Plaintiff earned "take home" sobriety and was only required to report to the clinic three times a week. (Tr. 32). She was assessed a global assessment of functioning ("GAF") score of 50 at the clinic.[1] (Tr. 303, 306).

In February 2006, Plaintiff underwent a psychological examination with Richard G. Ivins, Ph.D., a licensed psychologist. Dr. Ivins indicated that Plaintiff had a moderate to moderately severe degree of impairment. (Tr. 273-274). He

---

[1] A GAF of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social occupations or school functioning (e.g., no friends, unable to keep a job). Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) ("DSM-IV").

diagnosed Plaintiff with polysubstance dependence, post-traumatic
stress disorder, major depressive disorder, recurrent, and anti-
social personality disorder (Tr. 272).

Plaintiff has been hospitalized for psychiatric issues at
least seven times. (Tr. 271). Just prior to an October 2006
hospitalization, she attempted suicide. (Tr. 340-41, 443-44,
458). She was admitted to the Rockford Center with a GAF of 30
on admission and a GAF of 50 on discharge. She was diagnosed
with bipolar disorder, type I, most recent mixed episode, with
psychotic features, impulse control disorder, polysubstance
dependency including cocaine, and borderline personality disorder
(Tr. 443).

In November 2006, she began treating with David Kalkstein,
M.D., Ph.D. & Associates. Her treatment with Dr. Kalkstein and
Sue G. Evans, a licensed clinical social worker, continued
through 2008. Dr. Kalkstein's notes are difficult to read, but
suggest some progress in Plaintiff's condition. However, the
notes and opinions from these medical sources indicate that
Plaintiff experiences auditory and visual hallucinations. (Tr.
429, 431, 489). Her GAF ranged between a 35 and 40 during this
time frame.

Plaintiff also treated with orthopaedic specialists for a
trimalleolar fracture of the ankle. (Tr.346, 415-416). She
underwent a surgical repair on March 2, 2007. Four months later,

4

Plaintiff reported she was doing well; however, nine months later she had a second surgery to remove the hardware from her ankle. (Tr. 417-418).

## B.    The A.L.J.'s Decision

At the hearing, Plaintiff was represented by counsel, and Plaintiff testified.  The A.L.J. consulted a vocational expert and asked her to consider a hypothetical person with Plaintiff's age and education, no work experience, and limited to light work due to a recent ankle injury.  The A.L.J. further limited the individual to simple unskilled work, occasional contact with coworkers and the general public, work that is low stress requiring only an occasional need to make decisions or use judgment, and work that would not be at a productive pace, meaning not paid by the piece or in an assembly line.  (Tr. 53-54).  In response, the vocational expert identified three jobs such a person could perform:  (1) preassembler for printed circuit boards with 400 jobs locally and 385,000 jobs nationally, (2) bagger, dry cleaning with 900 jobs locally and 65,000 jobs nationally, and (3) mail clerk (not Post Office related) with 350 jobs locally and 86,000 nationally.  (Tr. 54).

In her decision dated March 14, 2008, the A.L.J. found that Plaintiff suffered from the following severe impairments:  "polysubstance dependence, bipolar disorder, type I, anxiety disorder, schizoaffective disorder and s/p ankle fracture

5

effective February 22, 2007, and obesity." (Tr. 13). The A.L.J. further found that, considering Plaintiff's impairments, including her substance abuse disorder, that Plaintiff had the residual functional capacity to perform "light work as defined in 20 CFR 416.967(b) not requiring work on a regular and continuing basis, the ability to understand, remember and carry out simple instructions, the ability to make simple-work related decisions, to complete a normal work week without interference from psychiatrically based symptoms, to accept instructions and respond appropriately to changes and criticism or deal with normal work stress." (Tr. 15). The A.L.J. went on to conclude that when Plaintiff is using drugs, she is unable to sustain the most basic mental demands of work. (Tr. 15). The A.L.J. concluded that in light of Plaintiff's impairments, including her substance abuse, there are no jobs she can perform in the national economy. However, if Plaintiff stopped her substance abuse, the A.L.J. found that she would still have moderate difficulties but that she would be able to perform the demands of light work "involving limited contact with co-workers and low stress in a non-production environment." (Tr. 18). Thus, the A.L.J. concluded that Plaintiff's substance abuse is a contributing factor material to the determination of disability, and that if Plaintiff stopped abusing drugs she would be able to work. Thus, the A.L.J. concluded that Plaintiff was not under a

6

disability within the meaning of the Act.

## STANDARD OF REVIEW

Findings of fact made by the Commissioner of Social Security are conclusive, if they are supported by substantial evidence. Accordingly, judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision.  Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).  In making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record.  Id.  In other words, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence.  Id. at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence.  As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Pierce v. Underwood, 487 U.S. 552, 555 (1988).

With regard to the Supreme Court's definition of "substantial evidence," the Court of Appeals for the Third Circuit has further instructed, "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores

7

or fails to resolve a conflict created by countervailing
evidence. Nor is evidence substantial if it is overwhelmed by
other evidence . . . or if it really constitutes not evidence but
mere conclusion." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir.
1983). Thus, the substantial evidence standard embraces a
qualitative review of the evidence, and not merely a quantitative
approach. Id.; Smith v. Califano, 637 F.2d 968, 970 (3d Cir.
1981).

## DISCUSSION

## I.  Evaluation Of Disability Claims

Within the meaning of social security law, a "disability" is
defined as the inability to do any substantial gainful activity
by reason of any medically determinable physical or mental
impairment, which can be expected to result in death, or which
has lasted or can be expected to last, for a continuous period of
not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A),
1382(c)(a)(3). To be found disabled, an individual must have a
"severe impairment" which precludes the individual from
performing previous work or any other "substantial gainful
activity which exists in the national economy." 20 C.F.R. §§
404.1505, 416.905. In order to qualify for disability insurance
benefits, the claimant must establish that he or she was disabled
prior to the date he or she was last insured. 20 C.F.R. §
404.131, Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990). The

claimant bears the initial burden of proving disability.  20
C.F.R. §§ 404.1512(a), 416.912(a); Podeworthy v. Harris, 745 F.2d
210, 217 (3d Cir. 1984).

In determining whether a person is disabled, the Regulations
require the A.L.J. to perform a sequential five-step analysis.
20 C.F.R. §§ 404.1520, 416.920.  In step one, the A.L.J. must
determine whether the claimant is currently engaged in
substantial gainful activity.  In step two, the A.L.J. must
determine whether the claimant is suffering from a severe
impairment.  If the claimant fails to show that his or her
impairment is severe, he or she is ineligible for benefits.
Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

If the claimant's impairment is severe, the A.L.J. proceeds
to step three.  In step three, the A.L.J. must compare the
medical evidence of the claimant's impairment with a list of
impairments presumed severe enough to preclude any substantial
gainful work.  Id. at 428.  If the claimant's impairment meets or
equals a listed impairment, the claimant is considered disabled.
If the claimant's impairment does not meet or equal a listed
impairment, the A.L.J.'s analysis proceeds to steps four and
five.  Id.

In step four, the A.L.J. is required to consider whether the
claimant retains the residual functional capacity to perform his
or her past relevant work.  Id.  The claimant bears the burden of

establishing that he or she cannot return to his or her past relevant work. Id.

In step five, the A.L.J. must consider whether the claimant is capable of performing any other available work in the national economy. At this stage the burden of production shifts to the Commissioner, who must show that the claimant is capable of performing other work if the claimant's disability claim is to be denied. Id. Specifically, the A.L.J. must find that there are other jobs existing in significant numbers in the national economy, which the claimant can perform consistent with the claimant's medical impairments, age, education, past work experience and residual functional capacity. Id. In making this determination, the A.L.J. must analyze the cumulative effect of all of the claimant's impairments. At this step, the A.L.J. often seeks the assistance of a vocational expert. Id. at 428.

## II. Whether The A.L.J.'s Decision Is Supported By Substantial Evidence

By his Motion, Plaintiff contends that the A.L.J.'s decision is not supported by substantial evidence and contains several legal flaws. Specifically, Plaintiff contends that the A.L.J. (1) violated the Administration's policy in failing to recognize that the burden of proving that substance abuse is material to a finding of disability rests on the Administration; (2) failed to properly consider the opinion of Plaintiff's treating psychiatrist, mischaracterized the opinion of Plaintiff's drug

10

counselors, and substituted her own opinions for the opinions of the treating medical sources; (3) failed to consider other probative medical evidence in the record, including the opinions of state agency psychologists performing mental health evaluations; and (4) wrongly concluded that a GAF of 50 was indicative of moderate limitations.

The Court has reviewed the decision of the A.L.J. in light of the record evidence and concludes that the A.L.J.'s decision is not supported by substantial evidence and that a direct award of benefits is warranted in favor of Plaintiff. In cases involving drug or alcohol addiction, "[a]n individual shall not be considered to be disabled ... if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). In making this determination, the Commissioner evaluates which physical and mental limitation(s) would remain in the absence of substance abuse. 20 C.F.R. § 416.935(b)(2). The Commissioner then determines whether any or all of the remaining limitations would be disabling. Id. According to the Administration, the "[t]he most useful evidence" in making this materiality finding is evidence "relating to a period when the individual was not using drugs/alcohol." Social Security Administration, Questions and Answers Concerning DAA from the 07/02/96 Teleconference, No. EM-

11

96200 (Aug. 30, 1996).

Arguably, the most probative evidence in this case from the time period when Plaintiff was not using drugs and/or alcohol is the evidence from Plaintiff's treating psychiatrist, Dr. Kalkstein. However, the A.L.J. essentially mischaracterizes and misapplies Dr. Kalkstein's opinion in favor of treatment notes from Brandywine Counseling. Specifically, the A.L.J. stated that he "consider[ed] Dr. Kalkstein's opinion consistent with the claimant's history of dysfunction while experiencing the effects of polysubstance use and dependence." (Tr. 16). In this regard, the A.L.J. accepted Dr. Kalkstein's opinion for purposes of determining that Plaintiff was disabled in light of her impairments, including her substance abuse. When the A.L.J. proceeded to determine whether Plaintiff would be disabled absent her drug abuse, the A.L.J. concluded that Dr. Kalkstein's opinion was "not supported by treating notes for the period when the claimant is in substance abuse treatment," and further stated that "[t]here is no evidence that the claimant remains dysfunctional when she is not using illicit drugs and maintains compliance with treatment." (Tr. 21). The difficulty with the A.L.J.'s analysis, however, is that Dr. Kalkstein's opinion clearly pertains to a period of time when Plaintiff was not abusing drugs, and Dr. Kalkstein explicitly notes that his opinion concerning Plaintiff's limitations is not attributed to

12

alcohol and/or drug abuse by Plaintiff, but rather to her schizoaffective disorder. (Tr. 422-427).

The Commissioner contends that the A.L.J. was entitled to reject Dr. Kalkstein's opinion because it was inconsistent with his treatment notes and notes from Brandywine Counseling concerning Plaintiff's progress in drug treatment. Particularly, the Commissioner points to treatment notes by Dr. Kalkstein that Plaintiff was "doing a little better" and had "stabilized" to support the A.L.J.'s rejection of Dr. Kalkstein's opinion. However, the Third Circuit has stated in Brownawell that "a doctor's observation that a patient is 'stable and well controlled with medication' during treatment does not necessarily support the medical conclusion that the patient can return to work." Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 356 (3d Cir. 2008). Moreover, the records from the Brandywine counselors are more relevant to Plaintiff's progress concerning her drug addiction than to the affects of her psychiatric disorders which were being treated independently by a psychiatrist, Dr. Kalkstein, on a bimonthly basis for a sixteen month period during which Plaintiff had no positive drug tests.

The Commissioner also attempts to cast doubt on Dr. Kalkstein's records and portray them as inconsistent with the Brandywine counseling records by stating that

   it is rather telling that the Brandywine records make
   no mention of the atypical "very vivid, and terrifying"

13

> hallucinations warranting hospitalization endorsed by
> Dr. Kalkstein and Ms. Evans. If Plaintiff was truly
> experiencing such symptoms and the extreme functional
> limitations identified by Dr. Kalkstein, it is likely
> that some mention of her difficulties would appear in
> the contemporaneous Brandywine records.

(D.I. 22 at 20). In the Court's view, however, the

Commissioner's argument is speculative and provides no basis upon

which to properly reject the opinion of Dr. Kalkstein.   As

Plaintiff points out, the Brandywine counselors primarily focused

on Plaintiff's drug addiction.   Her psychiatric disorders were

noted by the Brandywine counselors, but were being treated

separately and independently by Dr. Kalkstein during this time

frame and there is no evidence suggesting that the counselors at

Brandywine were privy to the details regarding her psychiatric

condition.   As Dr. Kalkstein noted, Plaintiff's hallucinations

were a separate symptom of her schizoaffective disorder appearing

during a time when she was not using or abusing drugs, and

Plaintiff has a reluctance to acknowledge these symptoms to

others.   (Tr. 422-424, 429-432).

Further, the Court finds that the A.L.J. erred in her

assessment of the Brandywine Counseling records.   Specifically,

the Brandywine records indicate that Plaintiff was assessed a GAF

score of 50, which is indicative of serious limitations.

However, the A.L.J. erroneously considered this score to be

"representative of only moderate functional impairment."   (Tr.

20).   While it is true that the Administration does not rely

14

solely on GAF scores to establish an impairment or its severity, a GAF score constitutes medically accepted evidence that must be addressed by an A.L.J. in making a determination regarding a claimant's disability. 65 Fed. Reg. 50745, 50764-65 (2000); see e.g., West v. Astrue, 2010 WL 1659712, * 4-5 (E.D. Pa. Apr. 26, 2010). GAF scores of 50 have been considered to be incompatible with the ability to work, and in this case, Plaintiff's highest GAF score of record is 50. See Lloyd v. Barnhart, 47 Fed. Appx. 135, 136 n.2 ("A Vocational Expert at the administrative hearing testified that a GAF of 50 or lower would indicate that [the claimant] would not be able to keep a job."). Yet, the A.L.J. incorrectly asserted the GAF score here as support for her decision that Plaintiff was not under a disability, when that score, thought not dispositive, actually weighs more in favor of a finding of disability than against such a finding.

In sum, the Court concludes that the A.L.J.'s findings and conclusions in this case are based upon a misapprehension and mischaracterization of the record evidence. The A.L.J. erroneously rejected the opinion of a treating specialist and incorrectly evaluated the highest GAF score in the record. The Court finds that this evidence overwhelmingly supports a finding of disability and a finding that Plaintiff's drug addiction is not a contributing factor material to a determination of Plaintiff's disability. The opinions and records of Dr.

15

Kalkstein cover a time frame when Plaintiff was not addicted to drugs and show that Plaintiff suffers from a significant mental illness, which precludes her ability to work.  Dr. Kalkstein's opinion is not only a "check the box form," but it includes notes explaining and supporting his position.  In addition, the record contains a letter from Dr. Kalkstein explaining Plaintiff's condition as follows:

> [Plaintiff's] illness of "schizoaffective disorder" is pervasive, complex and recurrent lifelong illness with tremendous psychological suffering.  The essential feature of her illness is an uninterrupted period during which there are not only major depressive symptoms but mixed episodes of mania and psychosis concurrent with schizophrenia symptoms.  Unlike a bipolar illness wherein there may be defined periods of stability, schizoaffective disorder presents a much more complicated mix with a prominent mood component to it resulting in significant problems with the thought process and concentration impairment; these alone would preclude her from holding a job not to mention all the other symptoms that would interfere with her ability to hold down a job.
>
> Unfortunately for [Plaintiff] due to the complexity of her illness and the history of her symptoms, she will probably never achieve an absence of symptoms enough so that she could even work in an unskilled work environment.

(Tr. 491).  This opinion is also consistent with other medical evidence in the record, including the opinion of Plaintiff's treating therapist, Ms. Evans, the opinion of the state consultative physician, Dr. Ivins, and the opinion of Dr. Johnson, the physician who treated Plaintiff during her October 2006 hospitalization.  Because the record is fully developed and

supports a finding of disability, the Court concludes that a
direct award of benefits is warranted.  See Brownawell, 554 F.3d
at 358; Morales, 225 F.3d 310, 320 (3d Cir. 2000).

## CONCLUSION

For the reasons discussed, the Court will grant Plaintiff's
Motion For Summary Judgment and deny Defendant's Cross-Motion For
Summary Judgment.  The decision of the Commissioner dated March
14, 2008 will be reversed and the Commissioner will be directed
to award benefits to Plaintiff.

An appropriate Order will be entered.